**Opinion filed July 12, 2012**



In The

# Eleventh Court of Appeals

_____

## No. 11-12-00044-CV

_____

## IN THE INTEREST OF B.S. AND B.F., CHILDREN

**On Appeal from the 318th District Court**

**Midland County, Texas**

**Trial Court Cause No. FM 52,162**

### M E M O R A N D U M   O P I N I O N

The trial court entered an order terminating the parental rights of the mother of B.S. and B.F. The trial court also terminated the parental rights of B.S.'s father. The mother (appellant) has filed a notice of appeal from the termination order. We affirm.

Appellant presents two issues for review. In those issues, she asserts that the evidence is legally and factually insufficient to support the finding that termination is in the best interest of her children.

Termination of parental rights must be supported by clear and convincing evidence. TEX. FAM. CODE ANN. § 161.001 (West Supp. 2011). To determine on appeal if the evidence is legally sufficient in a parental termination case, we review all of the evidence in the light most favorable to the finding and determine whether a rational trier of fact could have formed a firm belief or conviction that its finding was true. *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005). To

determine if the evidence is factually sufficient, we give due deference to the finding and determine whether, on the entire record, a factfinder could reasonably form a firm belief or conviction about the truth of the allegations against the parent. *In re C.H.*, 89 S.W.3d 17, 25–26 (Tex. 2002).

To terminate parental rights, it must be shown by clear and convincing evidence that the parent has committed one of the acts listed in Section 161.001(1)(A)–(T) and that termination is in the best interest of the child. Section 161.001. In this case, the trial court found that appellant committed four of the acts listed in Section 161.001(1). The trial court found that appellant had knowingly placed or knowingly allowed the children to remain in conditions or surroundings that endangered the physical or emotional well-being of the children, that appellant had engaged in conduct or knowingly placed the children with persons who engaged in conduct that endangered their physical or emotional well-being, that appellant had constructively abandoned the children, and that appellant had failed to comply with the provisions of a court order stating the actions necessary for her to obtain the return of the children. *See* Section 161.001(1)(D), (E), (N), (O). Appellant does not challenge the findings made pursuant to Section 161.001(1). Any one of these unchallenged findings was sufficient to support termination as long as termination was shown to be in the children's best interest. *See* Section 161.001. The trial court also found that termination was in the children's best interest. *See* Section 161.001(2).

The question before us is whether the best interest finding is supported by legally and factually sufficient evidence. With respect to the best interest of a child, no unique set of factors need be proved. *In re C.J.O.*, 325 S.W.3d 261, 266 (Tex. App.—Eastland 2010, pet. denied). But courts may use the non-exhaustive *Holley* factors to shape their analysis. *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976). These include, but are not limited to, (1) the desires of the child, (2) the emotional and physical needs of the child now and in the future, (3) the emotional and physical danger to the child now and in the future, (4) the parental abilities of the individuals seeking custody, (5) the programs available to assist these individuals to promote the best interest of the child, (6) the plans for the child by these individuals or by the agency seeking custody, (7) the stability of the home or proposed placement, (8) the acts or omissions of the parent that may indicate that the existing parent-child relationship is not a proper one, and (9) any excuse for the acts or omissions of the parent. *Id.* Additionally, evidence that proves one

or more statutory grounds for termination may also constitute evidence illustrating that termination is in the child's best interest. *C.J.O.*, 325 S.W.3d at 266.

The Texas Department of Family and Protective Services became involved with appellant and her children in July 2010 when appellant, while intoxicated, locked herself in a room with B.F., who was a baby at that time. Appellant had a knife and was reportedly threatening suicide. Services were begun after this incident. Then, on December 1, 2010, another incident occurred that caused the children to be removed from appellant's care. That night, appellant left the children alone in her apartment. B.S. was eight years old, and B.F. was eleven months old at that time. Appellant went to somebody else's residence and got into a physical altercation with a female. The police were called. The responding officer described appellant as being intoxicated, "[n]ot at all [sober]." He testified that appellant had a strong odor of alcoholic beverage, bloodshot eyes, and slurred speech. Appellant was taken to the hospital to get a wound in her head stapled shut. She was arrested at the hospital for public intoxication after she became belligerent with the police and the emergency room staff. The officer testified that appellant was in no condition that night to care for children.

The record shows that appellant has suffered with mental health issues since the age of fourteen and has threatened suicide numerous times. Appellant has been diagnosed with schizoaffective bipolar disorder, anxiety, and depression. Appellant also has a history of substance abuse, including alcohol, marihuana, and cocaine. Appellant admitted that she drank excessively and sometimes blacked out; that, up until a year before the trial in this case, she smoked marihuana daily; and that she started using crack after her children were removed. Although appellant had been to rehab twice, once in 2004 and once in August 2010, and was supposed to be working services to obtain the return of her children, she tested positive for cocaine two or three times while this case was pending in the trial court. She also failed to show for twelve of her nineteen scheduled drug tests. Appellant also reported "a vicious cycle" of domestic violence in her relationships with men. There was ample evidence that appellant could not provide a safe and stable home for her children.

Appellant was ordered to complete various services as part of her family service plan. She did not complete her services, and she cancelled twenty-two of the forty-nine scheduled visitations with her children. Appellant admitted at trial that she was in no position to take the children home with her, that the children were happy and healthy in the home of appellant's aunt,

and that B.F. would be in a happy and healthy home if placed with his father. Appellant also agreed that her aunt would be a wonderful adoptive mother for B.S. However, appellant requested that her rights not be terminated and that she be allowed to continue a relationship with her children through visitation.

The record shows that the trial court conferred with B.S. in chambers to determine her wishes. The Department's conservatorship caseworker in this case, Martha Mayo, testified that B.S. seemed much older than nine years old because of what she had seen and because B.S. had been responsible for a lot of B.F.'s care. Mayo reported that she did not see much of a bond between the children and appellant but that the "children are very bonded to [appellant's aunt]." The children had lived with appellant's aunt since December 6, 2010, and they were doing well in that home.

B.F.'s father learned two months prior to trial that B.F. was his son. During those two months, B.F.'s father had been "excellent" and had completed all of the services requested of him. He had bonded with B.F. in that short period of time and showed that he would be a responsible father to B.F. B.F.'s father and appellant's aunt were working together to keep a relationship between B.S. and B.F. The Department's ultimate goal for the children was for appellant's aunt to adopt B.S. and for B.F.'s father to have sole custody of B.F. Mayo testified that the termination of appellant's parental rights would be in the children's best interest.

Based upon the evidence in the record, we cannot hold that the trial court's best interest finding is not supported by clear and convincing evidence; the trial court could reasonably have formed a firm belief or conviction that it would be in the children's best interest for appellant's parental rights to be terminated. The evidence is both legally and factually sufficient to support the best interest finding. Appellant's first and second issues are overruled.

We affirm the trial court's order terminating the parental rights of the mother of B.S. and B.F.

JIM R. WRIGHT
CHIEF JUSTICE

July 12, 2012

Panel consists of: Wright, C.J.,
McCall, J., and Kalenak, J.

4